UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSE RENE VALDEZ,

    Petitioner,

v.

Case No. 1:11-cv-240
Hon. Robert J. Jonker

THOMAS BIRKETT,

    Respondent.
    _____/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

**I.    Background**

The crimes in this case occurred on the evening of July 3, 2007 and continued over into the early morning hours of July 4, 2007, in Berrien County, Michigan. During that period of time, petitioner fractured one victim's skull with a hammer, tried to attack another victim with a blade and stole a car. The events were fairly summarized by respondent as follows:

> Michael Alvarado was a friend of Petitioner's older brother, Orlando Valdez (Tr I, 103-104). Alvarado worked with Orlando and Petitioner at Klug's Farm in Royalton Township, Michigan (Tr I, 105). Alvarado came to work at the farm just a few days before July 3, 2007 (Tr I, 105-106). Juan Obregon, Petitioner's cousin, was the head farmhand at the farm (Tr I, 105,180). Obregon was married to Priscilla Obregon, who also worked at the farm (Tr I, 105). Juan and Priscilla had been working at the farm since early 2007 (Tr I, 139). Ausencio Resendiz was also a worker at the farm (Tr I, 197).
>
> On July 3, 2007, Juan, Priscilla, their 2 children, Resendiz, and Petitioner's nephew went to see fireworks in Baroda (Tr I, 141). They left about 8:00 p.m. and returned a little after midnight on July 4, 2007 (Tr I, 141-142). After they got back, Alvarado, Juan, Priscilla, Orlando, Resendiz, and Petitioner were outside their

trailers having drinks (Tr I, 143, 201-202). Alvarado only had two beers that night and was not intoxicated (Tr I, 107). Petitioner had "quite a bit" to drink that night (Tr I, 107). The kids were hungry after returning from the fireworks (Tr I, 106). Alvarado agreed to cook chicken on a barbeque outside of Juan and Priscilla's trailer for everyone (Tr I, 143). Petitioner, Resendiz, Orlando, Priscilla, and the children were waiting by the barbeque for the chicken to cook (Tr I, 143).

When the food was cooked, Alvarado began to pass it out to the children, Priscilla and Resendiz (Tr I, 111,203). Resendiz was eating his food when he heard Petitioner run by him pretty fast, heading towards Alvarado, and saw Petitioner hit Alvarado in the head with a hammer (Tr I, 111, 145,204). Alvarado felt a blow to his head just behind his right ear and was knocked to the ground (Tr I, 111). Alvarado looked up to see Petitioner standing over him with a hammer in his hand (Tr I, 111). Petitioner was yelling and cursing at Alvarado, trying to go after him again, but Resendiz and Orlando held him back. (Tr I, 111, 143, 205-206).

Priscilla and Resendiz helped Alvarado off the ground and into Priscilla's trailer (Tr I, 148). Resendiz stood at the trailer door to prevent Petitioner from getting to Alvarado while Alvarado was trying to clean himself up in the bathroom with Priscilla's help (Tr I, 112, 210). Alvarado had blood coming out of his right ear and told Priscilla that he needed to go to the hospital (Tr I, 149). Petitioner asked him, "Are you gonna call the police on me?" (Tr I, 112). Alvarado told Petitioner that he was going to report Petitioner to the police (Tr I, 116). Resendiz went into the trailer, put Alvarado's arm over his shoulder, and helped to carry him out of the trailer to Priscilla's car so they could go to the hospital (Tr I, 211).

When Priscilla tried to get Alvarado to her car so she could take him to the hospital, Petitioner blocked her way and told her "No, you're not going nowhere" (Tr I, 150). Petitioner went after Priscilla with a blade, trying to cut her, and slammed the car door on her (Tr I, 150). Petitioner continued to threaten Priscilla and Resendiz (Tr I, 150). Petitioner threw a chair at the car (Tr I, 150). Priscilla and Ausencio managed to get into the car (Tr I, 150). Priscilla then put the car into reverse in a hurry and managed to drive off towards the hospital (Tr I, 150-151).

Alvarado was taken to Lakeland Hospital where he was treated in the emergency room by Dr. Christian Sikorski, a neurosurgeon (Tr II, 281, 283). Sikorski found that Alvardo sustained internal injuries that included a fractured skull and a subdural hematoma (Tr II, 284-286). Sikorski found that Alvarado also suffered external injuries that included swelling and redness around the right ear, but no lacerations (Tr II, 288). The injuries sustained were consistent with blunt force trauma caused by being hit with a hammer (Tr II, 289-290).

Priscilla drove Alvarado and Resendiz back to the farm from the hospital at about 5:00 a.m. (Tr I, 155). When they arrived, Priscilla noticed that her other car,

2

a 1990 Subaru Legacy station wagon, was missing and a set of keys to the car were missing from her dresser in her trailer (Tr I, 151, 155, 157). Priscilla was the sole owner of the car and she did not give anyone permission to take it (Tr I, 155). Petitioner and his brother were not at the farm when Priscilla returned, and their trailer was empty of any personal belongings (Tr I, 158). Lansing City Police Officer Richard Ballor found Priscilla's car at Petitioner's family's house in Lansing, Michigan (Tr II, 303-305). Priscilla went to Lansing to retrieve her car and found a check stub belonging to Petitioner in the car along with a television that had been taken from Resendiz's trailer (Tr I, 160). Petitioner never returned to the farm to work after that night (Tr I, 162).

Respondent's Brief at pp. 4-5.

Following a jury trial in the Berrien County Circuit Court, petitioner was convicted of assault with intent to do great bodily harm less than murder, M.C.L. § 750.84; unlawfully driving away an automobile (UDAA), M.C.L. § 750.413; and two counts of assault with a dangerous weapon (felonious assault), M.C.L. § 750.82. *People v. Valdez*, No. 285962, slip op. at p. 1(Mich. App. Nov. 19, 2009) (docket no. 12). He was sentenced as an habitual offender, fourth offense, M.C.L. § 769.12, to concurrent terms of 10 to 30 years imprisonment for assault with intent to do great bodily harm less than murder, 76 months to 30 years imprisonment for UDAA, and 58 months to 180 months imprisonment for each count of felonious assault. *Id.*

Petitioner, through counsel, raised three issues in his direct appeal to the Michigan Court of Appeals:

I. Was [petitioner] unlawfully deprived of the effective assistance of trial counsel when trial counsel failed to [sic] and preserve an insanity or temporary insanity defense?

II. Did the trial court unlawfully deprive [petitioner] of his due process, equal protection, and other protected rights under the United States and Michigan Constitutions when it failed to take into account all mitigating evidence in sentencing [petitioner]?

III. Did the trial court unlawfully violate the United States and Michigan Constitutions in sentencing [petitioner] to a prison term of 10-30

3

>years on a habitual offender 4th supplement arising out of the GBH [sic] assault conviction, to a prison term of 76 months to 30 years on a habitual offender 4th supplement arising out of the UDAA conviction, and to prison terms of 58 - 180 months on a habitual offender 4th supplement arising out of each of the ADW [sic] convictions?

Petitioner's Brief (docket no. 12). The Michigan Court of Appeals affirmed the conviction and sentences. *Valdez*, No. 285962 (Mich. App. Nov. 19, 2009).[1]

Petitioner raised the same three issues in his pro per application for leave to appeal to the Michigan Supreme Court. *See* Application for leave (docket no. 13). The Michigan Supreme Court denied the application because it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Valdez*, No. 140325 (Mich. March 29, 2010) (docket no. 18).

Petitioner raised the same three issues in his habeas petition filed in this Court and relies on the arguments set forth in his appellate brief. *See* Petition at pp. 4-5 (docket no. 1); Brief (docket no. 1-3).

## II. Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, she must first fairly present the substance of her claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons*

---

[1] The Michigan Court of Appeals had previously denied petitioner's motion to remand. *Valdez*, No. 285962 (Mich. App. Dec. 2, 2008) (docket no. 12).

*v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). In the present case, petitioner has exhausted his state remedies with respect to his habeas claims.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 776, 773 (2010) (internal quotation marks and citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, -- U.S.-- , 131 S. Ct. 770, 786 (2011). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* The AEDPA's deferential standard "requires Petitioner to show 'the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing [Supreme Court precedent] beyond any possibility for fairminded disagreement.'" *Blackmon v. Booker*, 696 F.3d 536, 538 (6th Cir. 2012),

5

quoting *Harrington*, 131 S. Ct. at 786-87. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 131 S. Ct. at 786. "If this standard is difficult to meet, that is because it was meant to be." *Id.*

Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause of § 2254(d)(1), "a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to a state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

6

### III. Discussion

#### A. Ineffective assistance of trial counsel (Issue I)

Petitioner contends that his trial counsel was ineffective for failing to investigate and raise an insanity defense. The Michigan Court of Appeals addressed this issue as follows:

> Defendant first argues that he received ineffective assistance of counsel because defense counsel failed to investigate his mental condition and present an insanity defense. Because defendant did not raise this issue in a motion for a new trial or for an evidentiary hearing under *People v. Ginther*, 390 Mich. 436, 443, 212 N.W.2d 922 (1973), our review of this claim is limited to mistakes apparent on the record. *People v. Rodriguez*, 251 Mich.App. 10, 38, 650 N.W.2d 96 (2002).
>
> To prevail on a claim of ineffective assistance of counsel, defendant must show that defense counsel's performance fell below an objective standard of reasonableness, and was so prejudicial that he was denied a fair trial. *People v. Toma*, 462 Mich. 281, 302, 613 N.W.2d 694 (2000). He must overcome the strong presumption that counsel's actions constituted sound trial strategy. *People v. Hoag*, 460 Mich. 1, 6, 594 N.W.2d 57 (1999). "The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v. Grant*, 470 Mich. 477, 493, 684 N.W.2d 686 (2004). However, the failure to present evidence constitutes ineffective assistance of counsel only when it deprives the defendant of a substantial defense. *People v. Daniel*, 207 Mich.App. 47, 58, 523 N.W.2d 830 (1994).
>
> Here, defendant has provided no evidence, affidavits or documentation to support the claim that he may have been, or had the potential to be, pathologically intoxicated such that he was insane or temporarily insane at the time of the incidents leading to his arrest. He has offered nothing but bald speculation to support his argument that counsel should have investigated this line of defense. Defendant has thus failed to establish the factual predicate for his claim of ineffective assistance of counsel. *Hoag*, *supra* at 6, 594 N.W.2d 57. Moreover, although defendant was intoxicated at the time of the incident, there is no evidence that his intoxication was involuntary as is required to qualify for the insanity defense. *People v. Caulley*, 197 Mich.App. 177, 187, 494 N.W.2d 853 (1992).
>
> Finally, on the record before us, we cannot conclude that counsel's failure to investigate and assert an insanity defense fell below an objective standard of reasonableness. To assert an insanity defense, a defendant must show that as a result of mental illness or mental retardation, as the terms are statutorily defined, that he or she "lacks substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the

7

requirements of the law." MCL 768 .21a. After the incident, defendant apparently told the victim and his wife that they had better not snitch on him, then fled the area. This conduct strongly suggests that he was aware of and could appreciate the nature and quality or the wrongfulness of his conduct, and could conform to the requirements of the law. The record does not demonstrate that defendant was deprived of a substantial defense.

*Valdez*, No. 285962, slip op. at pp.1-2.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original), *cert. denied* 508 U.S. 975 (1993). Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.

As the Michigan Court of Appeals aptly noted, petitioner "has provided no evidence, affidavits or documentation to support the claim that he may have been, or had the potential to be, pathologically intoxicated such that he was insane or temporarily insane at the time of the incidents leading to his arrest." Contrary to petitioner's position on appeal, the trial testimony indicates that

8

petitioner was aware of his actions and the consequences of those actions. After attacking Alvarado with a hammer, petitioner threatened him and Priscilla Obregaon in an effort to prevent Alvarado from reporting the incident to the police. Petitioner also tried to prevent Alvarado from getting to the hospital. When Alvarado eventually left for the hospital, petitioner stole a car and fled the area.

The Michigan Court of Appeals determined that the evidence presented at trial or during the appeal did not support a viable insanity defense under state law. Give this record, defense counsel was not ineffective for failing to raise such a claim. The Supreme Court "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Defense counsel is not ineffective for failing to raise a meritless argument. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial"); *United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999) ("[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument"); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("[c]ounsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel"); *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("[t]he Sixth Amendment does not require counsel . . . to press meritless issues before a court"). Accordingly, petitioner's claim should be denied.

    **B.    Trial court failed to take into account all of the mitigating evidence in sentencing petitioner (Issue II)**

Petitioner contends that the trial court sentenced petitioner without taking into account all of the mitigating evidence in violation of due process, equal protection, "and other

9

protected rights under the United States and Michigan Constitutions." Petitioner's Brief at p. 18.

The Michigan Court of Appeals addressed this issue as follows:

> Next, defendant raises several sentencing issues, arguing that he is entitled to resentencing. We will affirm a defendant's sentence on appeal if it is within the recommended minimum sentence range under the legislative guidelines, absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the sentence. MCL 769.34(10); *People v. McLaughlin*, 258 Mich.App. 635, 669-670, 672 N.W.2d 860 (2003).
>
> First, defendant claims that the trial court failed to properly consider mitigating factors when imposing sentence; however, in making this argument, defendant fails to describe the mitigating factors the trial court failed to consider. An appellant may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim. *People v. Kevorkian*, 248 Mich.App. 373, 389, 639 N.W.2d 291 (2001). We do note, however, that defense counsel argued lack of malice and defendant's intoxication at sentencing. Thus, there was an effort to articulate mitigating factors to the trial court.

*Valdez*, No. 285962, slip op. at p. 2.

Petitioner's brief does not address any particular mitigating factor that existed in this case, other that stating that "[t]he record discloses that [petitioner] was never evaluated by a medical professional to support an insanity or temporary insanity defense in light of the offense(s) and his substance abuse history (i.e., alcohol and cocaine), as disclosed on page 2 of the Presentence Investigation Report." Petitioner's Brief at pp. 10-11. While petitioner refers to the Presentence Investigation Report, that report is not in the Court file. The undersigned agrees with the Michigan Court of Appeals' observation that petitioner has merely announced a position on this issue leaving it to this Court "to discover and rationalize" the basis for his claim. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

Even if the Court considered this claim, petitioner is not entitled to relief. Contrary to petitioner's claim, the sentencing transcript reflects that the trial judge was aware of mitigating factors and presumably took those into account. At the sentencing, defense counsel told the judge that petitioner did not "commit these crimes out of any sort of malice," but that "[h]e was intoxicated at the time and I suspect does not fully recall even wanting to injure this person." Sent. Trans. at p. 13. In his statement to the trial judge, however, petitioner appeared to contradict defense counsel's attempt at mitigation, claiming that he planned "to come back on appeal," that he did not have a fair trial, and that "this Michael Alvarado guy" that he attacked "ain't no good guy like you guys think he is," and that from what petitioner heard Alvarado had "just been involved in a murder that happened in Lansing." *Id.*

Before handing down the sentence, the trial judge examined a number of factors, including matters raised in the Presentence Investigation Report:

> This is what's troublesome to the Court about this case, sir. You were on felony probation at the time you committed these offenses. Then you committed these offense [sic]. Then, you were subsence -- subsequently, later, convicted of another felony in Ingham County, that's around Lansing.
>
> \* \* \*
>
> Okay. I mean, so were on a regular old criminal spree. And this was an extremely serious case. You are very lucky and fortunate that you're not standing in front of this Court on a murder charge yourself. You hit a man in the head with a hammer. Common sense tells you that that can kill someone. You don't wheel [sic] a hammer as a weapon against another human being. And I can tell you that I dealt with cases in the past where people were, in fact, murdered by being struck in the head with a hammer. So you're very lucky that you're only here on Assault with Intent to Commit great Bodily Harm less than Murder.

*Id.* at pp. 14-15.

In reviewing this report, the trial judge noted that petitioner had been to jail five times in the past and prison once. *Id.* at pp. 15-16. The trial judge also noted that petitioner had been involved in four other offenses which involved assaultive type activities, which she found "very troubling," and the testimony in the present case petitioner committed "an extremely violent act" which was "completely and totally inexcusable, without justification." *Id.* at p. 16. Based on this record, the trial judge found that "for the safety of this community, it's appropriate that you be incarcerated for a significant period of time," with the purpose of the sentence to be "punishment, protection of the community, deterrence, reformation, as well as, restitution." *Id.* Based on this record, the trial judge appropriately considered a variety of factors in determining petitioner's sentence, including those set out in the Presentence Investigation Report.

To the extent that petitioner claims the trial judge violated Michigan law, such claims are not issues cognizable under § 2254. Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Federal habeas corpus relief does not lie for errors of state law, which includes the state's computation of petitioner's prison term. *Kipen v. Renico*, 65 Fed. Appx. 958, 959 (6th Cir. 2003), citing *Estelle*, 502 U.S. at 68. *See Austin v. Jackson,* 213 F.3d 298, 300 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief). "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" *Id.* at 301, *quoting Williams v. New York*, 337 U.S. 241, 245 (1949).

To the extent that petitioner attempts to raise a federal constitutional issue, his attempt fails. "The Eighth Amendment does not require consideration of mitigating factors at sentencing in non-capital cases." *Engle v. United States*, 26 Fed.Appx. 394, 397 (6th Cir. 2001), citing *Harmelin v. Michigan*, 501 U.S. 957, 995-96 (1991) ("We have drawn the line of required individualized sentencing at capital cases, and see no basis for extending it further"). *See also*, *Alvarado v. Hill*, 252 F.3d 1066, 1069 (9th Cir. 2001) (observing that the "Supreme Court has limited its holdings concerning mitigating evidence to capital cases").

The only arguable federal constitutional claim that petitioner could raise under these facts would involve a due process violation in the sentencing. Criminal defendants have a due process right to a sentence based on accurate information. *United States v. Tucker*, 404 U.S. 443, 447 (1972); *see also*, *Townsend v. Burke*, 334 U.S. 736, 740-41(1948). In this regard, the Supreme Court has sustained due process objections to sentences imposed on the basis of "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980), quoting *Tucker*, 404 U.S. at 447; *see also*, *Townsend*, 334 U.S. at 740-41.

> To demonstrate a due process violation "the defendant must establish that the challenged evidence is materially false or unreliable, and that such false or unreliable information actually served as the basis for the sentence." *United States v. Silverman*, 976 F.2d 1502, 1512 (6th Cir.1992) (emphasis deleted) (quoting *United States v. Robinson*, 898 F.2d 1111, 1116 (6th Cir.1990)). The evidence a sentencing court relies upon need only possess "some minimal indicia of reliability." *Robinson*, 898 F.2d at 1115. Unless Jones can show that he was prejudiced he has no due process claim. *United States v. Stevens*, 851 F.2d 140, 144 (6th Cir.1988).

*United States v. Jones*, 40 Fed. Appx. 15, 17 (6th Cir. 2002).

However, petitioner cannot show a due process violation in this case. The record reflects that the trial judge reviewed petitioner's Presentence Investigation Report, heard defense counsel's attempt to mitigate the sentence based on petitioner's lack of malice and intoxication, and

13

also heard petitioner's comments in which he apparently sought to justify his attack because the victim, Alvarado, was not a "good guy." Petitioner has not established that the trial judge sentenced him based upon materially false or unreliable evidence. Petitioner's claim should be denied.[2]

### C. Petitioner's sentences violated the Michigan and Federal constitutions (Issue III)

Finally, petitioner relies on his appellate brief to support this generalized claim of error. From this brief, the Michigan Court of Appeals was able to identify three issues, i.e., petitioner was given a disproportionate sentence, the trial court failed to conduct an assessment under MCR 6.425(A)(5), and the sentence violated *Blakely v. Washington*. This Court will address those same three issues.

#### 1. Proportionality

Petitioner contends that his sentences were disproportionate to his offenses in violation of the Eight Amendment's prohibition on cruel and unusual punishment. The Michigan Court of Appeals addressed this issue as follows:

> [D]efendant argues that the trial court erred when it failed to explain why the sentences were proportionate. Defendant specifically argues that the trial court should have considered his familial support, and his addictions to alcohol and cocaine. Defendant was, however, sentenced within the guidelines, and this Court

---

[2] Petitioner devotes two sentences of his brief claiming that defense counsel was ineffective "when he failed to have introduced mitigation evidence and to object to the court's failure and/or refusal to consider all mitigation evidence in sentencing." Petitioner's Brief at p. 25. As an initial matter, the Court does not consider this conclusory claim of ineffective assistance of counsel as having been fairly presented to the Michigan Court of Appeals. *See generally*, *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir.2004) ("general allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present claims' that specific constitutional rights were violated"); *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995) ("[a] lawyer need not develop a constitutional argument at length, but he must make one"). However, even if the Court considered the claim, it would be denied because the trial court did not commit any error with respect to mitigation evidence and defense counsel had little to no mitigation evidence to present. Defense counsel would not be ineffective for failing to make meritless arguments or objections at the sentencing. *See Coley*, 706 F.3d at 752; *Sanders*, 165 F.3d at 253; *Ludwig*, 162 F.3d at 459; *Lilly*, 988 F.2d at 786.

14

has held that a minimum sentence within the sentencing guidelines is presumed proportional. *People v. Powell*, 278 Mich.App. 318, 323, 750 N.W.2d 607 (2008). [FN 1] Furthermore, where the trial court relied on the sentencing guidelines, it was under no obligation to further state its reasons for the sentence. *People v. Conley*, 270 Mich.App. 301, 313, 715 N.W.2d 377 (2006). In any event, we do not find defendant's self-serving statements concerning family support and his addictions to be substantial and compelling such that a downward departure from the guidelines was warranted. MCL 769.34(3).

> [FN1. Defendant's argument that his sentence was disproportionate, amounting to unconstitutional cruel and/or unusual punishment in violation of the federal and state constitutions fails for the same reason. "[A] sentence within the guidelines range is presumptively proportionate, and a sentence that is proportionate is not cruel or unusual punishment." *Powell*, *supra* at 323, 750 N.W.2d 607.]

*Valdez*, No. 285962, slip op. at pp. 2-3.

"Federal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). *See United States v. LeClear*, 365 Fed. Appx. 656, 657 (6th Cir. 2010) (same, quoting *Thomas*). *See also*, *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991) (adopting the "narrow proportionality principle" articulated by Justice Kennedy in *Harmelin*, 501 U.S. at 996-1009, who concluded "that petitioner's sentence of life imprisonment without parole for his crime of possession of more than 650 grams of cocaine does not violate the Eighth Amendment"). Because petitioner's sentence was neither a death penalty nor life in prison without possibility of parole, he is not entitled to federal habeas relief based upon the proportionality of his sentence claim.

### 2. Assessment under MCR 6.425(A)(5)

Petitioner contends that the state court failed to comply with the requirements of MCR 6.425(A)(5). At the time of petitioner committed his crimes, MCR 6.425(A)(5) provided that

15

prior to sentencing, the probation officer must investigate, among other things, "the defendant's background and character" and prepare a written report that "must be succinct and, depending on the circumstances, include: . . . (5) the defendant's medical history, substance abuse history, if any, and, if indicated, a current psychological or psychiatric report." MCR 6.425(A)(5) (2007). The Michigan Court of Appeals addressed this issue as follows:

> [D]efendant argues that the trial court erred in failing to conduct an assessment under MCR 6.425(A)(5) to determine defendant's rehabilitative potential. We disagree. The trial court was not required to order an assessment of defendant's rehabilitative potential under MCR 6.425(A)(5). This rule only requires that a presentence report include a defendant's medical and substance abuse history and, if indicated, a current psychological or psychiatric report. In this case, the presentence report included defendant's medical and substance abuse history, and noted that defendant had not been diagnosed with any mental health issues. The presentence report complied with MCR 6.425(A)(5), and no further assessment was required.

*Valdez*, No. 285962, slip op. at p. 3.

Petitioner's alleged error with respect to MCR 6.425(A)(5) involves a matter of state law. The Michigan Court of Appeals found that petitioner's presentence report complied with the requirements of state court rule. Petitioner's claim is not cognizable on federal habeas review. *Estelle*, 502 U.S. at 68.

### 3. *Blakely v. Washington*

Petitioner contends that his sentence violated the Supreme Court's decision in *Blakely* because petitioner's "plea or verdict" did not encompass all of the findings made by the trial judge at sentencing and petitioner did not "acknowledge the truth" of the facts used in scoring the sentencing guidelines. Petitioner's Brief at pp. 35-36. The Michigan Court of Appeals addressed this issue as follows:

> [D]efendant argues that the trial court's scoring of sentencing guidelines variables violated *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403

16

> (2004). However, *Blakely* is inapplicable to our sentencing scheme because Michigan uses an indeterminate sentencing scheme in which a trial court sets a minimum sentence, but can never exceed the statutory maximum sentence. *People v. Drohan*, 475 Mich. 140, 164, 715 N.W.2d 778 (2006). Accordingly, "[a]s long as the defendant receives a sentence within that statutory maximum, a trial court may utilize judicially ascertained facts to fashion a sentence within the range authorized by the jury's verdict." *Id.* Defendant's sentence being within the range authorized by the jury's verdict, this argument fails.

*Valdez*, No. 285962, slip op. at p. 3.

The Michigan Court of Appeals correctly concluded that the constitutional rights referred to in *Blakely* do not apply in this case. *Blakely* concerned the State of Washington's determinate sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge. Applying the Washington mandatory sentencing guidelines, the trial judge found facts that increased the maximum sentence faced by the defendant. The Supreme Court found that this scheme offended the Sixth Amendment, because any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Blakely*, 542 U.S. at 301.

Unlike the State of Washington's determinate sentencing system, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term. The Sixth Circuit has determined that *Blakely* does not apply to Michigan's sentencing system, provided that the sentence does not exceed the statutory maximum. *See Montes v. Trombley*, 599 F.3d 490, 496-98 (6th Cir. 2010) (Michigan's indeterminate sentencing scheme did not violate the defendant's due process rights or right to a jury trial under *Blakely*); *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) (affirming district court's dismissal of prisoner's claim under *Blakely* and *Apprendi v. New Jersey*, 530 U.S. 466 (2000) because it does not

17

apply to Michigan's indeterminate sentencing system, and stating that "*Apprendi*'s rule does not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum"); *Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007) (*Blakely* does not apply to Michigan's indeterminate sentencing system).

Here, petitioner was convicted as an habitual offender, fourth offense, M.C.L. § 769.12, and sentenced to concurrent terms of 10 to 30 years imprisonment for assault with intent to do great bodily harm less than murder, 58 months to 180 months imprisonment for each count of assault with a dangerous weapon (felonious assault), and 76 months to 30 years imprisonment for UDAA. Each of these sentences fell within the statutory maximum under Michigan law. *See Valdez*, No. 285962, slip op. at pp. 1 and 3. Accordingly, petitioner's claim should be denied.

### IV. Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated: March 10, 2014                          /s/ Hugh W. Brenneman, Jr.
                                               HUGH W. BRENNEMAN, JR.
                                               United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).